UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMMANUEL O. EBEA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-1146-DFH-TAB |
| | ) | |
| G&H DIVERSIFIED, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In early 2006, plaintiff Emmanuel Ebea was an employee of Express Personnel Services, a temporary staffing agency.  He was assigned to work at defendant G&H Diversified's Indianapolis, Indiana plant as a production assistant. On March 22, 2006, Ebea's left thumb was severed by a miter saw in an accident at G&H's plant.  Ebea sued G&H for negligence seeking damages for his injury.

After Ebea's case was removed from state to federal court, G&H sought dismissal of Ebea's claims on the theory that Ebea was also an employee of G&H, so that the Indiana Worker's Compensation Act would bar his claim.  Under Indiana worker's compensation law, an employee may have more than one employer at the same time, see *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001), citing Ind. Code § 22-3-3-31, so it is possible that Ebea was employed by both Express and G&H at the time of his injury.  If so, his remedies against both would be limited to those provided by worker's compensation law.  The court

denied G&H's motion to dismiss (declining G&H's invitation to treat its motion as one for summary judgment), cautioning that based on the expanded record submitted by the parties, a motion for summary judgment by either party regarding Ebea's employment relationship would be unlikely to succeed. *Ebea v. Black & Decker, Inc.*, 2008 WL 1932196, *4 (S.D. Ind. May 1, 2008).[1]  G&H has now moved for summary judgment on that same issue.  Its motion is denied.

*Summary Judgment Standard*

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law.  *Id.*  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor.  See *Reeves v. Sanderson Plumbing*

---

[1]Ebea's claim against defendant Black & Decker, Inc. was dismissed, leaving G&H Diversified as the only defendant remaining in this matter.

*Products, Inc.*, 530 U.S. 133, 150 (2000).  The moving party need not positively disprove the opponent's case; rather, the moving party can win summary judgment by establishing the lack of evidentiary support for the non-moving party's position.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

G&H argues that Ebea was its employee at the time of his injury, so that he may seek compensation from G&H only pursuant to the Indiana Worker's Compensation Act, Ind. Code. § 22-3-2-2 *et seq.*  Under Indiana procedural law, a person's employment status for purposes of the worker's compensation statute is treated an issue of subject matter jurisdiction for which the trial judge acts as the finder of fact.  See *Downham v. Wagner*, 408 N.E.2d 606, 610-11 (Ind. App. 1980).  Here, however, Ebea's state-law based case was removed to federal court. In federal court, the issue of employment status under Indiana law goes to the merits of the claim and is a mixed issue of law and fact appropriate for submission to a jury if the facts are in dispute.  *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1306 & n.4 (7th Cir. 1993) (holding that *Downham* procedures did not apply in federal court).  Here the court may not resolve factual disputes, but, consistent with the usual standard for summary judgment, must give Ebea the benefit of factual conflicts and favorable inferences that could be drawn from the evidence.

Summary judgment is not appropriate if a rational jury could conclude that Ebea was not dually employed by both Express and G&H.

<em>Facts for Purposes of Summary Judgment</em>

In January 2006, Ebea was interviewed and hired for employment by Express Personnel Services, a service that provided temporary workers to other companies.  Ebea Aff. ¶ 2.  Express assigned him to work at G&H Diversified and instructed him to report to Mark Holman.   Ebea described the instructions he received as follows:

> Q.    How did you find out that you had been assigned to work at the G&H facility?
>
> A.    Upon my interview, Express was – they told me that – they told me that my assignment was going to be at G&H. And they gave – they printed out the paper and gave me – and they just – you know, the rate, pay, and job assignment, what I'm going to be doing and told me to report on – on a Monday, I think, what time to report at G&H and [the] address and everything.
>
> Q.    Did they tell you who to report to?
>
> A.    Yes, Sir.
>
> Q.    And who was that?
>
> A.    It was Mr. Mark Holman.

Ebea Dep. 167.

Ebea began working at G&H on January 23, 2006.  Ebea Dep. 65.  G&H listed Ebea on its work schedule.  Holman Aff. ¶ 6; Holman Dep. 38.  Although he worked at G&H, Ebea was paid directly by Express.  Dkt. 24, Ex. 5; Holman Aff. ¶ 6.   During the relevant time period, Ebea performed his work at G&H's Indianapolis facility.  Neither G&H nor Express assigned him to work anywhere else while he worked at G&H.  Ebea Dep. 180-81.

While Ebea worked at G&H, he was supervised by G&H production supervisor Holman.  No one other than Holman or another G&H employee directed Ebea in his job.  Holman Affidavit ¶¶ 4, 10.  Holman was responsible for assigning Ebea's daily tasks.  Ebea Dep. 90-91; Holman Aff. ¶ 11.  All of the equipment and tools Ebea used in his work at G&H, including an air bander, a drill, a grinder, and a compound miter saw, were owned by G&H and provided to Ebea by G&H.  Holman Aff. ¶ 12.  None of the tools or equipment that Ebea used were provided by Express.  Ebea Dep. 173.

Ebea was assigned to be a production assistant.  His job was to identify bad parts, clean up the floors, and load pipes into machines for cutting.  Ebea Dep. 75, 77; Ebea Aff. ¶ 6. He also arranged pipes into bundles for shipping and cut pieces of wood with a miter saw to support the pipes.  Ebea Aff. ¶ 6.

On March 22, 2006, Ebea reported for work at G&H's manufacturing plant in Indianapolis.  He was assigned to cut pieces of wood with a miter saw.  Ebea

Aff. ¶ 7.  Because the saw blade's protective plastic cover would obstruct the operation of the saw otherwise, Ebea lifted the plastic protective cover and held it with his thumb.  Ebea Aff. ¶ 7.  Around 3:30 p.m., Ebea's left thumb became caught in the miter saw and was completely severed by the blade.  *Id.*

One week after Ebea was injured, Express dispatched him to work at another company's facility in Lebanon, Indiana.  Three days later Express terminated his employment.  Ebea Aff. ¶ 9.

Ebea sought coverage for his injury under the Indiana worker's compensation system.  On March 27, 2006, Express's worker's compensation carrier sent a letter to Express and Ebea confirming its receipt of the worker's compensation claim in connection with Ebea's injury.  Dkt. 24, Ex. 3.  Ebea's claim against Express was then submitted to the Indiana Worker's Compensation Board.  Dkt. 24, Ex.4.  G&H has provided no evidence indicating that it provided any form of assistance to Ebea for his injuries.  G&H also has provided no evidence that it contributed any funds to Indiana Workforce Development to cover worker's compensation benefits for its Express temp-to-hire staff.

Ebea was hired pursuant to a staffing agreement between G&H and Express for temporary staff.  Relevant provisions of that agreement include:

We [Express] hire temporary associates as Our employees and We will be responsible for providing all wages, taxes, withholding, benefits, workers compensation and insurance for Our employees.  Staffing Agr. ¶ 1.

We comply with all applicable Federal, State and Local employment laws and regulations, including the Equal Employment Opportunity Act and Fair Labor Standards Act.  We will indemnify and hold You [G&H] harmless from any claims or damages caused by Our non-compliance with any such laws. Staffing Agr. ¶ 2.

We will recruit, screen, hire and place temporary associates who are best qualified to meet Your specifications.  You agree to notify Us of any changes in the duties or workplace of Our temporary associate(s) from those originally furnished to Us.  You will supervise, direct and control the work performed by Our temporary associates and are responsible for all operational results, including bodily injury (except for bodily injury to the temporary associates covered by workers' compensation), physical loss or damage to machinery, equipment, materials, data or other property in the care, custody, or control of an Express temporary associate, unless such loss is caused by the willful misconduct of Our temporary associates. Staffing Agr. ¶ 3.

We provide temporary associates to perform the duties specified by you.  We are not present to direct the work and so cannot be responsible for, and You agree to indemnify and hold us harmless for, any losses or damage from work performed by temporary associates in a reasonably prudent manner or as instructed by You, or losses resulting from misconduct or negligence by You. . . .  Staffing Agr. ¶ 4.

We provide a safety orientation to each of Our temporary associates.  You agree to provide Our temporary associates with a safe, suitable workplace and equipment, and to comply with all applicable laws concerning occupational safety, health, disability discrimination, and sexual harassment. . . . Staffing Agr. ¶ 6.

We pay Our temporary associates promptly, based on information approved by you. You agree to pay the charges evidenced by the time card or other mutually acceptable recording method by the invoice due date. . . . Staffing Agr. ¶ 7.

You may hire an Express temporary associate directly anytime after the associate has been on the assignment for 520 hours for light industrial services assignments and 720 hours for office services assignments. . . . Staffing Agr. ¶ 8

In his affidavit, Ebea stated that he did not have discussions with anyone at either Express or G&H regarding whether G&H might eventually hire him, and he believed his work at G&H was temporary.   Ebea Aff. ¶ 9.[2]  In his deposition, Holman testified:  "I had planned on hiring him on a full-time basis as soon as he got his hours in. I wanted to keep him.  He was a good worker."  Holman Dep. 51; see also Holman Aff. ¶ 8.  Until Express workers were hired full-time, however, Holman did not consider them to be employees of G&H.  Holman Dep. 24 (when asked to explain why G&H did not maintain personnel files for temp-to-hire employees, Holman explained:  "Because they were not our employees until they were hired full-time.").

On approximately four occasions, it was necessary for G&H to terminate its relationship with workers provided by Express.   Holman Aff. ¶ 13. On those

---

[2]Contrary to his affidavit, Ebea testified in his deposition:

Q.    Did you ever talk to Mr. Holman about your future, if you had one, at G&H?

A.    Oh, yes.  They just told me [to] . . . not mess up.  You know, always come in . . . on time and do your job.  And he did let me know,  . . . that there [were] various opportunities to go with the company. . . . [A]fter a while, after a couple of months or so – I think it was three months – you know, they might hire me on.  And from there, there were various jobs that if I was interested I could get trained at. . . . [T]hey would just let me know . . . I just had to be on time and . . . not mess up or anything.

Ebea Dep. 181.  As discussed below, the court finds the discrepancy between Ebea's affidavit and his deposition irrelevant to its analysis of what the parties believed regarding Ebea's then-current employment status.  It need not resolve this discrepancy here.

occasions, Holman contacted Express and said that a particular worker's services were no longer required.  Express always complied with Holman's requests that a particular employee not return to G&H.  Holman Aff. ¶ 13.

## Discussion

The Indiana Worker's Compensation Act provides the exclusive remedy against employers for employees who suffer injuries arising out of and in the course of employment.  Ind. Code § 22-3-2-6.  The Act bars a court from hearing a common-law claim brought against an employer for its employee's on-the-job injury.  *GKN*, 744 N.E.2d at 402.  Under the Act, it is possible for an employee to have more than one employer at the same time – a situation referred to as "dual employment."  See *id.*, citing Ind. Code § 22-3-3-31 (where employee is in the joint service of two or more employers, both are obliged to contribute to payment of compensation in proportion to their wage liability to the employee, "provided, however, that nothing in this section shall prevent any reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation"); see also *Reboy*, 9 F.3d at 1307 (dual employment doctrine should be considered in context of worker's compensation exclusivity defense).  Where an employee has multiple employers, the Worker's Compensation Act remains the employee's exclusive remedy against the employer(s) for covered injuries.  *Degussa Corp. v. Mullens,* 744 N.E.2d 407, 412 (Ind. 2001).  The Act permits actions against third-party tortfeasors, as Ebea

contends G&H is here, if the third-party is neither the plaintiff's employer nor a fellow employee.  Ind. Code § 22-3-2-13;  *GKN*, 744 N.E.2d at 402.

In a dual employment case that was not governed by an explicit contract on the subject, the Indiana Supreme Court instructed courts to consider seven factors in determining whether an employment relationship exists for purposes of applying the worker's compensation bar:

> (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries.

*Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991).  In *Hale*, the court wrote:  "[T]he primary consideration is that there was an intent that a contract of employment, either express or implied, did exist.  In other words, there must be a mutual belief that an employer-employee relationship did exist."  579 N.E.2d at 67, quoting *Rensing v. Indiana State Univ. Bd. of Trustees*, 444 N.E.2d 1170, 1173 (Ind. 1983). More recently, the Indiana Supreme Court has said that none of the seven *Hale* factors is dispositive by itself, and they must be weighed against each other as part of a balancing test to determine whether an employer-employee relationship exists – the majority does not necessarily win.  *GKN*, 744 N.E.2d at 402 (affirming finding that employee of construction project subcontractor was not also an employee of the general contractor).  In *GKN*, the court seemed to disagree with *Rensing* and *Hale* on the weight to be given the parties' beliefs as to whether an

employment relationship existed, though *GKN* seemed to address the point in subjective rather than objective terms.  The court wrote that the greatest weight should be given to the fifth of the seven factors – the right to exercise control over the means used by the employee in the results reached.  *Id.*

The Indiana Supreme Court has not directly addressed this dual employment issue in a case like this one, where a temporary staffing contract controls the relationship between the direct employer (here, Express) and its customer (G&H), who claims that the temporary staff member is really its own employee for purposes of the worker's compensation exclusivity bar.  The Indiana Court of Appeals has struggled with similar cases, producing what one judge has described as "fractured rulings."  See *Wishard Memorial Hosp. v. Kerr*, 846 N.E.2d 1083, 1088 (Ind. App. 2006) (collecting cases and affirming holding that nurse employed by temporary staffing agency was not employee of hospital for purposes of worker's compensation); cf. *Jennings v. St. Vincent Hospital & Health Care Ctr.*, 832 N.E.2d 1044 (Ind. App. 2005) (affirming holding that nurse employed by temporary staffing agency was an employee of hospital for purposes of worker's compensation).

This court's role in this diversity jurisdiction case is to predict how the Indiana Supreme Court would decide the issue of state law if the issue arose today.  *State Farm Mutual Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).  As noted, the *Hale* factors guide courts where the parties have not provided much

explicit guidance themselves.   Where two businesses have structured their contractual relationship to provide that one is the employer and have taken no explicit steps to take advantage of the statutory option for dual employment, it is difficult to see why the courts should stretch the definition of employment to find dual employment.  In an analogous situation, the Indiana Supreme Court refused to pierce the corporate veil to protect a parent corporation from tort liability for its subsidiary's employee's workplace injury under the worker's compensation exclusivity provision.  The court explained:

> While we have expressed willingness to use our equitable power to disregard the corporate form to prevent fraud or unfairness to *third parties*, we perceive little likelihood that equity will ever require us to pierce the corporate veil to protect the same party that erected it.  It was, after all, defendant that chose to structure itself in its present multi-corporate form.

*McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1020 (Ind. 1995) (emphasis in original).   Here, G&H willingly entered into a temp-to-hire arrangement with Express, with G&H enjoying many benefits of Ebea's work but bearing none of the burdens of his full-time employment, including dealing with or directly paying taxes, insurance, and contributions on Ebea's behalf to Indiana's worker's compensation.  The agreement made no effort to take advantage of the statutory option for dual employment.  See Ind. Code § 23-3-3-31.  Now that it is in its interest to do so, G&H wishes to prove that Ebea, despite the terms of the contract with Express, was actually an employee of G&H.  This court predicts that the Indiana Supreme Court would apply to this case the reasoning of *McQuade* and respect the agreement the parties reached before the accident, rather than

allowing one party, in effect, to modify the agreement after the fact to the disadvantage of an injured third party.  In addition, as explained in detail below, even under the *Hale* factors, there is sufficient evidence in the record from which a reasonable jury could conclude that Ebea was not dually employed by Express and G&H.  Under either approach, G&H's motion for summary judgment must be denied.

I.      *Right to Discharge*

G&H asserts that it retained the right to discharge Ebea from his work at G&H and that this factor weighs in favor of a finding of dual employment.  Def. Br. 16.  As Holman testified, on occasion it was necessary for G&H to terminate its relationship with workers provided by Express.  On those occasions, Holman contacted Express and informed Express that a particular worker's services were no longer required.  Holman Aff. ¶ 13.  Ebea seems to concede that G&H could have terminated him from his work at G&H, but he argues that the conduct of the parties after Ebea's injury supports the proposition that this factor should be given little weight.  Pl. Br. 12.

G&H acknowledges that Indiana courts give this factor minimal weight in their overall analysis.  The Indiana Court of Appeals has explained that "it is hard to imagine an independent contractor arrangement that would not allow the hiring company to discharge the worker if it was unsatisfied with him or her."  *Wishard*

-13-

*Memorial Hospital v. Kerr*, 846 N.E.2d 1083, 1089 (Ind. App. 2006), quoting *Jennings v. St. Vincent Hosp. & Health Care Ctr.*, 832 N.E.2d 1044, 1056 (Ind. App. 2005) (Barnes, J., dissenting).  The *Kerr* court continued:  "Indeed, in reviewing the multitude of cases on the issue of dual employment, we have been unable to find a single case in which an entity 'borrowing' a worker from another entity did not have the 'indirect' right to discharge the worker if the worker was unsatisfactory."  *Id.* at 1089.  Here, of course, G&H could have chosen to have Express remove Ebea from his work at G&H.  But G&H's right to end Ebea's assignment with it says nothing about whether G&H was Ebea's employer (or whether G&H had control over plaintiff), only that G&H had control over its own operation.  A reasonable jury would have to find that this factor weighs in favor of dual employment, but because the right of an entity to indirectly discharge is universal, as Indiana courts have noted, it has little weight.

II.     *Mode of Payment*

G&H does not dispute that plaintiff was a payroll employee of Express. G&H notes that Ebea punched a time clock at G&H and, although he was paid by Express, G&H paid Express for the hours that Ebea worked.  Def. Br. 16-17. Relying on *Nickels v. Bryant*, 839 N.E.2d 1211 (Ind. App. 2005), G&H argues that this arrangement weighs in favor of dual employment.

The arrangement in *Nickels* is easily distinguishable from the arrangement among Ebea, G&H, and Express here.   In *Nickels*, Bryant (the independent contractor who was ultimately found to be Nickels' dual employer) was responsible for reimbursing Nickels' primary employer for all costs associated with her employment, including all of her wages, any tax liability incurred in connection with those wages, a share of the cost of her group health and life insurance coverage, and payment of the matching portion of her 401(k) contributions. *Nickels*, 839 N.E.2d at 1214-15.   Particularly noteworthy here, Bryant also reimbursed Nickels' primary employer for the costs associated with Nickels' worker's compensation coverage.  *Id.*  Although the money was funneled to Nickels from her primary employer, "the costs of employing Nickels came indirectly from Bryant."  *Id.* at 1216.  Here, Express, not G&H, bore the costs of employing Ebea. Express was responsible for Ebea's wages, taxes, withholdings, benefits, insurance, and also absorbed all of the costs associated with Ebea's coverage under workers compensation.  Staffing Agr. ¶ 1.  From these facts, a reasonable jury could find that this factor weighs against dual employment.[3]

III.    *Tools and Equipment*

---

[3]As a matter of economics, of course, the court assumes that Express charged G&H enough for Ebea's time to cover all of those expenses and to provide a profit for Express.  That would be true for any business in such a relationship. But the evidence does not show that G&H was charged specifically for any of those items related to Ebea's work.

Ebea concedes that G&H provided all of the tools and equipment he used in his work at G&H.  Pl. Br. 13.  A reasonable jury would have to find that this factor weighs in favor of dual employment.

IV.    *Belief of the Parties*

G&H argues that it believed plaintiff was "on track" to long term employment in a "temp-to-hire" arrangement.  Def. Br. 17-18.  G&H asserts that it was contractually bound by the Staffing Agreement to wait until Ebea had worked for 520 hours (approximately three months) before hiring him.  *Id.* at 18. Holman testified that it was G&H's routine practice to hire temporary staff and that he intended to hire Ebea.  Holman Aff. ¶ 8; Holman Dep. 51.  Being "on track" to *become* an employee is not the same as *being* an employee.  Even Holman testified that temp-to-hire employees, like Ebea, "were not our employees until they were hired full-time."  Holman Dep. at 24.

The undisputed evidence shows that at the time of the accident, G&H did not believe that Ebea was its employee.  If it had believed him to be an employee at the time of the accident, there would have been no need to hold an expectation that he would have been hired in the future.  From this a reasonable jury would have to conclude that the fact that G&H expected to hire Ebea in the future indicated that he was not hired in the present, and would have to find that this factor weighs against a finding of dual employment.

G&H raises a discrepancy between Ebea's affidavit and his deposition testimony regarding whether he and Holman had discussed his potential for full-time hire at G&H "and that he understood that he would be on track for payroll employment if he performed his job satisfactorily."   Def. Br. 18, discussing discrepancy between Ebea Aff. ¶ 9 and Ebea Dep. 181.   This discrepancy is not material to the court's analysis.   Even if the court relied only on Ebea's deposition testimony over his affidavit testimony and treated as undisputed fact that Ebea, too, expected that he would be hired by G&H at some point in the future, Ebea's expectation regarding his future employment at G&H only serves to bolster the fact that he did not believe he was G&H's employee at the time of the accident. This argument fails.

V.    *Control*

The Indiana Supreme Court has said that the most important of the *Hale* factors is the right of the employer to exercise control over the means used in the results reached.  *GKN*, 744 N.E.2d at 402.  G&H argues that this factor weighs "entirely and heavily" in its favor, relying on the terms of the Staffing Agreement ("[G&H] will supervise, direct, and control the work performed . . ."; "[Express] provide[s] temporary associates to perform duties specified by you.  [Express] is not present to direct the work . . . "; "[G&H] agree[s] to provide [Express'] temporary associates with a safe, suitable workplace and equipment . . . "), and the fact that while Ebea worked at G&H, Holman supervised Ebea, G&H prepared his schedule, and Holman told Ebea what work he was to perform on a daily basis.  Def. Br. 19; Staffing Agr. ¶¶ 3, 4, 6; Holman Affidavit ¶¶ 4, 6, 10, 11; Ebea Dep. 90-91; Holman Dep. 38.  These facts are undisputed, and without more a reasonable jury would have to find that they support a finding of a dual employment relationship.

But other facts could lead that reasonable jury to the opposite conclusion. Express controlled Ebea's placement at G&H in the first place, directing him to report to Holman.  Ebea Dep. 167.  Express later directed him to report to work at another company's facility in Lebanon, Indiana.  Ebea Aff. ¶ 9.  A jury could conclude that Express had ultimate control over the means used in the results reached, and to the extent G&H exerted control over Ebea, it did so only because

Express temporarily allowed it to do so.  Prior to his injury, if Express had reassigned Ebea and instructed him to leave G&H's facility, and if G&H had issued a contrary instruction and told Ebea to stay, a reasonable jury could find that Ebea would have been obligated to follow Express' direction and ignore G&H's.  Although G&H controlled the details of Ebea's work while he was assigned to work at G&H's facility – and, rightly so, for he was using its tools and equipment, working alongside its employees, and affecting the quality of G&H's workplace and product – only Express controlled Ebea's work placement, and thus controlled whether he would have any role at all in the means used and results reached under *Hale*.  On summary judgment, of course, the choice between reasonable inferences, even from undisputed facts, is left to the jury.  The determination of this factor could go either way and will be left to a jury.

VI.    *Length of Employment*

G&H concludes that "the approximately ten weeks that Ebea [worked] at G&H is not purely dispositive of a long employment relationship."  Def. Br. 20.  Indeed.  In support of a finding of dual employment on this factor, G&H argues that, since both parties were considering long-term, permanent employment in the future, Ebea's work was "indefinite" in nature.  Def. Br. 20.  What this has to do with the length of Ebea's employment is unclear.  What is clear is that Ebea worked at G&H from approximately January 23, 2006 to March 22, 2006.  From

this relatively short period of time, a reasonable jury could conclude that this factor weighs against a finding of dual employment.

VII.    *Work Boundaries*

Plaintiff concedes that after he was assigned by Express to work for G&H, he performed all of his work within the physical boundaries of the G&H facility and that this factor would weigh in favor of a finding of dual employment.  Pl. Br. 16.  The weight that a reasonable factfinder might attribute to this factor is a separate question.  As noted, Express assigned Ebea to work at G&H's facility, and a jury could infer that Express could have reassigned Ebea away from that facility.  The fact that Express did not move him from G&H's facility fits the unclear description Indiana courts have provided for establishing "work boundaries," see, *e.g.*, *Jennings*, 832 N.E.2d at 1053-54 (Indiana case law indicates that this factor implicates spacial boundaries, while temporal or other boundaries should be analyzed under the "control" factor), but the factor seems to be of minimal value when considering that Ebea worked at G&H and remained there because that is where Express had assigned him.  The jury may attribute weight to this factor that it feels appropriate.

At best, the seven *Hale* factors send an ambiguous message.  Summary judgment is not appropriate on worker's compensation exclusivity grounds because the record evidence would permit a reasonable jury to find that the

factors favor the conclusion that Ebea was not employed by G&H and was solely employed by Express.

## Conclusion

G&H's motion for summary judgment is denied.  Trial remains scheduled on April 13, 2009, with a final pretrial conference on April 3, 2009.

So ordered.

Date: March 11, 2009

_DAVID F. HAMILTON, CHIEF JUDGE_
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

William M. Berish
MEILS THOMPSON DIETZ & BERISH
wberish@meilsattorney.com, wtrout@meilsattorney.com

Swaray Edward Conteh
contehlaw@att.net

Rick D. Meils
MEILS THOMPSON DIETZ & BERISH
rmeils@meilsattorney.com, wtrout@meilsattorney.com

John W. Mervilde
MEILS THOMPSON DIETZ & BERISH
jmervilde@meilsattorney.com